## ADLER-GOLDMAN COMMISSION COMPANY *v.* HATHCOCK.

Decided March 19, 1892.

*Sale—Fraud—Constructive notice.*

> One who without inquiry purchases a stock of goods from an insolvent debtor for an inadequate price and under circumstances sufficient to awaken supicion takes nothing as against creditors if the debtor's intent was fraudulent, notwithstanding he had no actual knowledge of that fact.

APPEAL from *Independence* Circuit Court.

JAMES W. BUTLER, Judge.

The Adler-Goldman Commission Company, a corporation, sued G. B. Pearson for $1200 due on an open account, and procured an attachment to be levied upon a stock of goods which was invoiced at $1542 and sold by the sheriff for $1058.60.   Hathcock interpleaded for the goods, claiming to have purchased them from Pearson.   The attachment was sustained.

Upon the trial of the interplea, Hathcock testified as follows:

"On January 18, 1890, in the evening, Mr. Pearson and I were talking about a sale of the goods to me.   He first proposed to take 75 cents on the dollar for them.   I finally

offered him 50 cents on the dollar. * * * He finally
told me he would take it. We agreed to close the trade
after supper. I was to have the goods on a basis of 50
cents on the dollar of their invoice cost, and was to pay
Pearson $500 cash, and the balance over this I was to pay to
James on a debt Pearson owed James. At 7 o'clock I went
to Pearson's store. Soon James came in ; also Henry Pear-
son. We stated the trade. Pearson wanted me to assume
the debt to James. I paid Pearson $500. He owed James
$250 or upwards. We agreed to take an invoice on Mon-
day. I paid the $500 in money and took charge of the
goods ; was to pay the balance to James. Monday we com-
menced to take an invoice. On Monday a part of the goods
were attached by the Hill Shoe Company. I held on to the
keys. We did not get the invoice completed until the sheriff,
under attachment from Adler-Goldman Company, took pos-
session of goods and house and refused to let us go on with
the inventory. I bought the goods in good faith, with the
expectation of making money out of them. I had no knowl-
edge of Pearson being in failing condition. I had no knowl-
edge of his intention to defraud his creditors. I thought
the goods were worth more than I paid for them ; $1542 in-
cludes everything, goods, fixtures, etc., according to sheriff's
inventory. I wanted a witness to the sale. I wanted it all
right between me and James. The goods were sold under
order of court for $1058.60." On cross examination, he said :
" Pearson did not make any arrangement with me for his
other creditors. I have not paid James anything yet. There
was nothing said about what was to be done with the
excess after James should be paid. * * * I did not
ask Pearson why he wanted to sell out to me at 50
per cent. The fact that he was offering to sell out at 50
per cent. did not raise any suspicion in my mind. I did not
make any inquiry into his financial condition. I don't know
why I paid him the $500 that night before the invoice was
taken. * * * I did not know Pearson had any other
creditors. I did not ask Pearson anything about his indebt-

edness. I did not care anything about it. I supposed all merchants were in debt, and I had no reason to suppose that Pearson was an exception."

Other testimony necessary to its understanding is sufficiently stated in the opinion. Upon the evidence and under the instructions the jury returned a verdict for the interpleader. The commission company has appealed.

*U. M. & G. B. Rose* and *Robert Neill* for appellants.

1. This is a clear case of fraud. Pearson was in failing circumstances—confessedly insolvent. The sale was at a grossly inadequate price, hurriedly consummated at night. See Bigelow, Fr. Conv., pp. 499, 506; 6 Wall., 299; 11 Fed. Rep., 559. Actual knowledge of the contemplated fraud is not necessary—but knowledge of facts sufficient to put a man on inquiry is sufficient. 50 Ark., 320; Bump, Fr. Conv. (3d ed.), pp. 199–208; Wait on Fr. Conv., p. 496.

2. The burden was on Hathcock, plaintiffs having made a *prima facie* case, to show a *bona fide* sale. 50 Ark., 292; Bump, Fr. Conv. (3d ed.) 208; 3 Phil., 30.

*C. B. Moore* for appellee.

1. There is no evidence that appellee knew, or by the use of reasonable diligence could have discovered Pearson's fraudulent intent. The jury so found, and the verdict should not be disturbed. 51 Ark., 467.

2. Appellant saved no exceptions to the instructions complained of. 39 Ark., 420; *27 id.*, 374; 38 *id.*, 413.

3. The onus to prove fraud remained on plaintiff, without shifting to the close. Kerr on Fraud and Mistake, p. 382; Story, Eq., vol. 1, sec. 190; 40 Ark., 418.

HEMINGWAY, J. The appellant argues that the court erred in giving two instructions asked on behalf of the appellee; but there was no exception to the giving of them, nor was it made a ground of the motion for a new trial. We cannot therefore review the court's action in this regard.

Whether the evidence sustains the verdict is the controlling question in the case.

That Pearson was insolvent, and, being pressed by his creditors, sold the stock of goods in bulk for 50 per cent. of its invoice price, collected two-thirds of the agreed price and withheld it from his creditors, are facts not controverted. Hathcock believed that Pearson owed mercantile debts and that he was embarrassed as other small merchants, and knew that he owned but little property and that the price to be paid was inadequate. The sale was first spoken of on Saturday afternoon and concluded that night before an inventory of the articles sold could be taken; Pearson demanded (without assigning a reason) and Hathcock paid (without asking one) $500 in cash that night; the balance, which was expected to be about $250, was to be paid, when the inventory should be completed, to a creditor of Pearson. These admitted facts and circumstances are viewed in law as badges of fraud; that is, as calculated to throw suspicion on the sale and call for an explanation (Wait's Fraud. Conv., chap. 16); and when they appear without explanation, the inference of fraud becomes conclusive. Bump, Fraud Conv., p. 33.

As such is the effect of such circumstances unexplained, they must be considered as sufficient in law to awaken suspicions as to the fraudulent intent of the seller, and to put the purchaser who knows of them upon inquiry, and, although no inquiry be made, to charge a knowledge of what might have been ascertained. Although Hathcock was affected by such notice, he made no inquiry, and now says only that he did not in fact know of his seller's fraudulent purpose. But this cannot avail him. He saw what the law esteems evidences of fraud, and should have investigated them; he could not close his eyes to them and rely upon his ignorance of what they indicated and he might have learned. His purchase aided the fraudulent design of his vendor; and as the character of the design was clearly suggested by the facts and circumstances known to him, he is judged in law to be a party to it. So he could take nothing by the purchase as against Pearson's creditors; and

since the facts that put him upon inquiry are undisputed and there is no claim that he made any inquiry, the verdict should have been set aside as not sustained by the evidence. *Birdsall* v. *Russell,* 29 N. Y., 249; *Tantum* v. *Green,* 6 C. E. Green, 364; *Dyer* v. *Taylor,* 50 Ark., 320; *Singer* v. *Jacobs,* 11 Fed. Rep., 559; *Christian* v. *Greenwood,* 23 Ark., 265–6; *Gollober* v. *Martin,* 33 Kas., 252; *Cottle* v. *Cleaves,* 70 Me., 256; *Bartles* v. *Gibson,* 17 Fed. Rep., 293; *Carter* v. *Coleman,* 84 Ala., 256.

For the error indicated the judgment is reversed, and the cause remanded.