### LESS *v.* GRICE.

Opinion delivered April 7, 1913.

1. FRAUDULENT SALE—NOTICE OF PURCHASER.—An embarrassed and insolvent debtor transferred a stock of goods to his brother for a wholly inadequate consideration, and the transfer stripped the debtor of all his property that could be reached by his creditors. *Held,* the purchaser ought, under the circumstances, to have known of the seller's financial condition but neglected every opportunity to ascertain it, and that the circumstances within the purchaser's knowledge were sufficient to put a man of common sagacity upon notice of the intention of the seller, and he will be charged with such notice and can not be a *bona fide* purchaser of the stock of goods. (Page 587.)

2. FRAUDULENT SALE—RIGHTS OF CREDITORS—CHANGE IN FORM OF PROPERTY.—Property purchased from an insolvent debtor by his brother in bad faith will be subjected to the payment of the claims of creditors, and where the purchaser has changed the form of the

property by exchanging it for land, the land is but a substitution for the property fraudulently conveyed, which will stand in the place thereof, and be liable in the same manner to the creditors. (Page 588.)

3.  APPEAL AND ERROR—FINDINGS OF CHANCELLOR.—When the findings of the chancellor are against the preponderance of the testimony, the decree will be reversed. (Page 588.)

Appeal from Mississippi Chancery Court, Chickasawba District; *Sam Costen,* Special Chancellor; reversed.

### STATEMENT BY THE COURT.

Appellants for themselves and others, creditors of W. C. Grice, filed a creditors' bill, alleging that he was indebted to them in certain specified amounts and other creditors in various sums; had been engaged in the mercantile business in Dell, Mississippi County, Arkansas; was insolvent, owed many debts and had no property, except the stock of goods, which was valued at $1,000; that his debts amounted to $1,200, or more, and that his creditors, pressing him for payment of their claims, on June 20, 1910, for the purpose of defrauding them and his other creditors, W. C. Grice, fraudulently sold and transferred to G. J. Grice, his brother, the stock of goods, who took possession thereof, under the pretended sale and transfer knowing of the insolvency of his brother and without paying any consideration for said goods. That immediately thereafter proceedings were begun to set aside the fraudulent transfer, but before the goods could be attached the said G. J. Grice, knowing of the pendency of the proceedings, and to further cheat and delay said creditors, traded the stock of goods obtained from his brother, W. C. Grice, to William and Alice Hosmer, for eighty acres of land, describing it, which was conveyed by them to him, and that they knew of the fraud practiced by W. C. and G. J. Grice, and were parties to it. Prayer was made for the sale of the goods and the exchange of the lands to be declared void, and the goods held subject to the payment of the debts and a lien fixed against the land for the balance. W. C.

Grice filed no answer. His brother, G. J. Grice, answered, denying any knowledge as to the indebtedness of W. C. Grice; admitted the purchase of the goods; alleged that it was made in good faith and for a consideration of $1,458 and further admitted the sale and transfer of the goods to Hosmer and his wife in exchange for the eighty acres of land. Hosmer and wife filed separate answers, alleging that she purchased the stock of goods, from G. J. Grice in good faith and without any knowledge of any indebtedness against it, and that the consideration paid for the goods was still owned by G. J. Grice.

The testimony shows that W. C. Grice purchased the stock of goods on credit; that it was inventoried and the inventory showed a value of between $1,900 and $2,000 and some of the goods were sold on the basis of 50 per cent of the cost price, $1,107.68, at fifty cents, $538.84, the selling price, and $919.16, at $1, $1,458, in all, and paid a small amount on the purchase price thereof. That he bought bills of goods from the creditors bringing this creditors' bill, and was indebted to them in the amount claimed and certain other creditors, also, in different amounts for new goods, and that he had not paid any part of said indebtedness, since he sold the stock of goods to his brother. That he owed Richardson, from whom he bought the stock of goods, $300. That others were on the note with him and he paid that note and $232 to Richardson and sold him a team for $250 and then owed him some. He only had a team, a cow and a couple of yearlings and a few hogs when he purchased the stock of goods. He sold the stock thereafter, in June, to his brother, who he said was in business about a month before he traded the stock of goods to the Hosmers for the land. He said further that his brother did not assume any of the debts which he owed, except for the house and lot, which did not go in with the stock of goods; that they did not owe any notes jointly, that his brother was not security for him at all; that he owed from $900 to $1,200 at the time of the trans-

fer and had something like $500 worth of debts due him. That he did not have $10 when he went out of business.

G. J. Grice admitted the purchase of the stock of goods, claimed there was an inventory made of it showing a valuation of between $1,900 and $2,000; that he got some of them at 50 per cent of the cost price and that he paid therefor what his brother owed him and $300 in money and agreed to turn over a crop to him at $15 an acre and the team, worth $300; that he did not assume any debts of his brother's and did not know he owed any debts; that he made no inquiry as to the condition of the business; did not ask to be shown the books and did not ask his brother whether he owed any debts at all or not. That it did not occur to him to find out.

These brothers lived within a quarter of a mile of each other and were on friendly terms; each knew of the financial condition of the other and G. J. Grice said he knew his brother bought some goods after he bought the business from Richardson, but he didn't know how much. That he was in the store from thirty to sixty days and sold the stock of goods or exchanged it for the land he valued at $2,400. This witness said his brother did not suggest the trade to him; that he had talked with Bonds about buying him out and his brother heard of this and said, "If you want to buy a business out, let me sell out to you." He didn't know anything about what kind of business his brother had been doing, whether it was cash or credit, nor did he make any examination of the books to see nor any inquiry as to how much his brother owed, and did answer that there was a desk fenced off where he kept his bills and that he had seen papers hanging there that looked like bills, but he made no examination of them.

W. B. Barton testified that he was employed by Johnson, Berger & Co. to try to collect its account against W. C. Grice, and went to see him a day or so before the transfer from G. J. Grice to the Hosmers; that he also knew of the claim of E. Less; that Grice told him he had sold out to his brother and that he only

got a wagon and team 'and the crop; that his brother was on a note for him and assumed the payment of that note and that paid for the store. That he did not have a dollar to pay him and could not pay one cent. That he told him there was no inventory of the goods made "just a lumping trade; just traded it for the crop and the team and his assuming the note." This witness also said he talked with G. J. Grice, who stated no inventory was taken and that he just made a lumping trade of the stock. He talked to him about the claims of the appellants and was told he had nothing to do with that, that he had bought the stock of goods and paid for it and that he would have to see his brother about that. He also stated he knew his brother owed some accounts, but that he did not assume them. He admitted he knew his brother owed Johnson, Berger & Co. G. J. Grice stated he did not know Barton and denied he told him he paid for the goods, as stated, and that no inventory was taken or that he stated he knew his brother owed some notes and the account to Johnson, Berger & Co., or any of them.

The decree recites a finding of indebtedness of the amount claimed by appellants and for other creditors, in all $1,428.20, at the time of the transfer of the stock of goods; that the sale was for a valuable and adequate consideration as to G. J. Grice, in good faith and not fraudulent, and that the exchange of the stock of goods to the Hosmers was likewise in good faith, and not fraudulent; dismissed the complaint, for want of equity, against G. J. Grice, and rendered judgment for appellants against W. C. Grice for the sum of their debts, from which judgment they appealed.

*Gordon Frierson* and *Lamb & Caraway*, for appellants.

1. Appellee G. J. Grice did not purchase in good faith and was not an innocent purchaser for value. 50 Ark. 314, 320; 55 *Id*. 579; 86 *Id*. 230; 51 Tenn. 476; 50 Ark. 42, 46; 45 *Id*. 523; 75 Ark. 393.

2.  The sale was a fraud on creditors, and the land should be held for their benefit.  Cases *supra.*

*Appellee pro se.*

1.  W. C. Grice had the right to prefer creditors. 67 Ark. 100; 63 *Id.* 22; 76 *Id.* 393.  G. J. Grice did not participate in the fraud.

2.  The consideration was adequate and he was an innocent purchaser.  45 Ark. 523.

3.  Appellee was not placed upon inquiry; nor was the conveyance fraudulent.  100 Ark. 370; *Ib.* 555; 99 *Id.* 128; 97 *Id.* 537; 77 *Id.* 305; 75 *Id.* 521.

KIRBY, J., (after stating the facts).  The testimony shows a sudden and hasty transfer of the stock of goods, first from W. C. Grice to his brother, without any investigation on the part of the purchaser to ascertain the condition of the business, or the indebtedness of the seller for the stock he was selling, for a totally inadequate consideration, and the transfer thereafter immediately upon his ascertaining that the creditors of his brother, W. C. Grice, were about to proceed against the stock of goods for the payment of their debt, to the Hosmers, for the lands described, which are admitted to be worth $2,400.  This brother, who made such an exceptionally good trade of so sorry a stock of goods for the land, denied that he assumed any of the debts of his brother upon the purchase of the stock, except for the house and lot, which was not included in the sale of the stock of goods, and the brother selling denied that his brother was on any note with him which was reckoned in the payment of the stock of goods in the selling of it; and notwithstanding they were living near together, and the families very friendly, and had been all along, and each knew the financial condition of the other, and that neither had any property of any material value as compared with the stock of goods being bought and sold, their testimony discloses that it was almost by accident that one discovered that the other desired to purchase a stock of goods, and the one desiring to buy that his

brother had a stock of goods for sale, and they had such implicit confidence in each other that no question was made as to the condition of the business, the amount of indebtedness, nor the exact amount that one was to pay the other therefor, and the one to whom the transfer of the stock of goods was made, immediately upon the appearance of the collector for appellant creditors in the town and talk of the proceeding to subject the stock of goods to the payment of their debts, traded it for the tract of land.

The brother who purchased the stock of goods and took possession of it knew that he was divesting W. C. Grice, appellants' debtor of all his tangible assets. His recollection as to the amount he paid therefor is hazy and unsatisfactory; does not correspond with that of the seller of the goods, and he made no effort whatever to discover the condition of the business, nor the amount of the seller's indebtedness. The circumstances within his knowledge were sufficient to put a man of common sagacity on inquiry and with the use of any diligence to lead him to the discovery of the fraudulent purpose of the debtor, and he should be charged with notice of such intention.

In *Dyer* v. *Taylor*, 50 Ark. 314, the court said: "To avoid a sale actual notice to the purchaser of the fraudulent intent of the vendor is not necessary. If the facts and circumstances within his knowledge are sufficient to put a man of common sagacity upon inquiry, and with the use of reasonable diligence to lead him to the discovery of the fraudulent purpose of the vendor, and he neglects to make the inquiry, he will be charged with notice of the fraudulent intent. No purchaser put upon inquiry has a right to remain wilfully ignorant of facts within his reach. It is not sufficient for his protection that he is a purchaser for value; he must also be an innocent purchaser. By aiding a debtor to convert his property into money, or promissory notes, which can be easily concealed from his creditors, and placed beyond their reach, with notice, actual or constructive, that he is doing

so to defraud his creditors, he participates in the fraud of the debtor, by assisting him in carrying out his fraudulent purpose.'' See also *Adler* v. *Hathcock,* 55 Ark. 579.

Moreover, this was a transfer of a stock of goods by an embarrassed and insolvent debtor to his brother, who ought, under the circumstances, to have known his financial condition and neglected every opportunity to ascertain it, for a wholly inadequate consideration and the transfer stripped the debtor of all his property that could be reached by his creditors, and certainly shows a lack of good faith upon his part in the purchase of it, and he can not be a *bona fide* holder thereof. *Wilkes* v. *Vaughan,* 73 Ark. 179; *McConnell* v. *Hopkins,* 86 Ark. 225.

We are of the opinion that the chancellor's finding is against the preponderance of the testimony. The creditors who filed this bill were entitled to have the stock of goods, which was fraudulently transferred by the debtor to his brother, who did not purchase it in good faith and become a *bona fide* holder thereof, subjected to the payment of their debts. The change of the form and character of the property by the fraudulent grantee by exchanging it for the land was but a substitution of the land for the property fraudulently conveyed which will stand in the place thereof and be liable in the same manner to the complaining creditors. 1 Moore, Fraudulent Conveyances, 171; *Bryant-Brown Shoe Co.* v. *Block,* 52 Ark. 458; 12 S. W. 1073.

The decree is reversed and the cause remanded with directions to render judgment for the amounts sued for by E. Less and Johnson, Berger & Co. and to fix the same as a lien against the tract of land purchased of the Hosmers by G. J. Grice, and if said judgment is not paid within a reasonable time to order said lands sold and the proceeds thereof applied to the satisfaction of the said judgment.