SISSON v. STATE.

Opinion delivered May 4, 1925.

1. WITNESSES — IMPEACHMENT — TESTIMONY BEFORE GRAND JURY.— Testimony of a witness before the grand jury is admissible on the trial of a criminal case only to contradict his testimony at the trial.

2. CRIMINAL LAW—HARMLESS ERROR.—Any prejudice by reading to the jury the statements of a witness before the grand jury was removed by an instruction that such statements were not substantive evidence and could not be considered by the jury.

3. WITNESSES—IMPEACHMENT AS TO CHARACTER.—A witness may not be impeached by testimony as to his character, based on what the impeaching witness knew and what everybody said about him, as the test is what is his general reputation in the community where he lives, under Crawford & Moses' Dig. § 4187.

4. CRIMINAL LAW—CHANGE OF VENUE.—Where, on application for a change of venue in a liquor prosecution, a supporting affiant testified that he based his opinion that defendant could not obtain an impartial trial in the county upon the fact that defendant's case had been widely discussed all over the county by the candidate for sheriff, who was thereafter elected and who stated that he was "going to send defendant to hell or to the penitentiary," such statement being prejudicial and justifying affiant in believing that the minds of the inhabitants had been prejudiced, *held* that the court abused its discretion in denying a change of venue.

Appeal from Randolph Circuit Court; *John C. Ashley*, Judge; reversed.

*Schoonover & Jackson* and *Smith & Blackford*, for appellant.

*H. W. Applegate*, Attorney General, and *Darden Moose*, Assistant, for appellee.

WOOD, J. B. F. Sisson was convicted in the Randolph Circuit Court of the crime of selling intoxicating liquor, and sentenced by judgment of the court to imprisonment in the State Penitentiary for a period of one year, from which judgment he appeals.

When the case was called for trial the appellant moved for a change of venue, setting up in his motion that the minds of the inhabitants of Randolph County were so prejudiced against him that he could not obtain a fair and impartial trial therein. The motion was supported by the affidavits of two persons. The prosecuting attorney resisted the motion, and had one of its supporting affiants called to testify. The witness was asked:

"Q. Do you know of any person in Richardson Township, the township in which Maynard is situated, who is so prejudiced against Mr. Sisson that he would not give him a fair and impartial trial? A. No sir. I will

say that I have not talked to all the people all over Randolph County, and I do not mean to say that he cannot get a fair and impartial trial in Randolph County, but I do mean to say that this matter has been discussed largely, and much of the discussion in regard to this case has been detrimental to the rights of Mr. Sisson. One of the things that prompted me to sign that affidavit was that I have been informed that the present sheriff, Mr. Perrin, and at that time chief deputy under Mr. Gullett, stated at various times, on the stump, when he was making his canvass for the office of sheriff, that he was going to send B. F. Sisson to hell or the penitentiary one, if he was elected sheriff. I was told by a number of different persons that Mr. Perrin stated repeatedly, and publicly, that he was going to send Mr. Sisson to hell or the penitentiary one. I knew that the sheriff's office had a vast influence, and, if it were I going to trial, I would not want to be tried in a county where such statements as that had gone out from the sheriff's office. And I have heard since then that Mr. Perrin threatened to do Mr. Sisson violence. Mr. Perrin approached me this morning about this, and I do not know whether he wanted to provoke a difficulty or not, but he stated something about this party not being able to get a fair and impartial trial in this county, and I told him that I had heard that he stated he would send him to hell or the penitentiary one. Q. Do you now say that he cannot get a fair and impartial trial in Randolph County? A. I would say this, that I would not want the present sheriff to summon the jury to try me, if it were I being tried under the same circumstances. If the present sheriff should summon the jury to try him, I do not believe then that he could. * * * Q. You are not acquainted with the sentiment of the people over the county generally regarding this case? A. I will not say that I am acquainted with the sentiment of the people in all parts of the county, but I will say it is my information that this case has been widely discussed in all townships in the

county. Q. You base your opinion that he could not obtain a fair and impartial trial in Randolph County upon the fact that the sheriff has taken an interest in this case? A. Yes sir, and partly what I have heard the sheriff state himself, and his speeches he made over the county in his campaign. Q. You did not hear those statements? A. No sir. * * * Q. And you have heard this discussed generally by people from all points in the county? A. I will say that it has been widely discussed. Q. Do you believe that, in view of the statements of Mr. Perrin publicly, on the stump, and because of his being sheriff of the county at this time, it would have a tendency to prejudice the people of the county against Mr. Sisson? A. I would feel that it was hazardous for me, and I would not want to be tried in the county, if he selected the jury."

Witness was then asked about the various townships in the county specifically, and named two townships in which he said he thought he had heard it talked, but could not name the parties that he had heard talking. He stated, "I know that this matter has been widely talked, but I could not name the parties that I have heard discuss it." The defendant thereupon offered the testimony of the other affiant to the effect that he was one of the defendant's lawyers; that he had heard the present sheriff, while he was a candidate for sheriff, make a public speech in every township in the county except two, and that on every stump in the county Mr. Perrin, who is now sheriff, told about Mr. Sisson having been indicted twice as an accessory to (witness) having been shot, and that he was then having Sisson indicted by the grand jury of Randolph County, then in session, seven or eight times for peddling whiskey, and that he was going to send Sisson to the penitentiary before he quit, and that the people of the entire county of the class from which juries are made attended these public speakings and heard these statements.

The trial court refused to hear the offered testimony, and stated that the other affiant had shown that he did not know the condition of the minds of the people of the county with regard to the case, and that, inasmuch as the law required the motion for change of venue to be supported by two witnesses, the offered testimony would only show that the motion was supported by the testimony of one affiant. The appellant excepted to the ruling of the court in excluding the offered testimony. The court thereupon overruled the motion for a change of venue.

One witness, Bob Lynch, testified to the effect that he and one William Junkersfield went to the house of Sisson to get some liquor. It was dark when they got there. Junkersfield was talking to some one that witness took to be Sisson. When Junkersfield came back to the car, they drove up the road about half a mile and stopped, and Junkersfield asked the witness if he wanted a drink. He had what they call "white mule" whiskey. Witness did not see Junkersfield get any whiskey from the appellant.

Junkersfield testified that he and Bob Lynch went to Ben Sisson's house, and stopped; that a fellow out in the yard asked witness what he wanted, and witness replied that he wanted a half gallon of whiskey, and the man said "All right," and witness gave him $6. Witness didn't know whether the man was Ben Sisson or not— could not say. The record shows that the following then occurred:

"Q. You swore before the grand jury? A. I said I bought it at Mr. Sisson's house. The witness was shown his statement before the grand jury and was asked: Is that your signature? and answered, Yes sir. Q. I will ask you, if you did not state— By the court: You need not answer that question. Let the witness look at his statement. The statement was then delivered to witness. By the prosecuting attorney: Look at those last few lines. Defendant objects. The court

then remarked: Let the witness read his whole statement, if he wishes to. The prosecuting attorney then asked the witness: Did you not testify before the grand jury that this was the man that you bought that liquor from? By the court: Don't answer that question. Q. Was it not a man that you have become acquainted with since that time, as Ben Sisson, that you bought the liquor from? A. I could not say. It was dark, and the man that I bought the whiskey from was bareheaded, in the yard, carrying in wood. I do not know who he was. Q. You are unwilling to say at this time that this is the man? (The defendant objected to the question, which was by the court overruled, to which exceptions were saved). A. I could not say. Q. You are unwilling at this time to say that the man that you have since become acquainted with as Ben Sisson was the man you bought the liquor from? A. I could not say."

The prosecuting attorney then asked the witness several times if he did not make the statement before the grand jury that he was not acquainted with the appellant at the time he bought the liquor, but had met him a number of times since, and was sure that it was Sisson that he bought the liquor from. The witness, over the objection of appellant, was permitted to answer that he told the grand jury that it must have been Sisson, as it was at his house. The witness was handed his testimony before the grand jury, and was asked if he signed that statement, and he answered that he did. Witness was finally asked by the court the following question:

"Q. Did you make that statement before the grand jury? A. Yes sir. Q. Is that true? A. Yes sir."

Counsel for appellant moved to exclude all the testimony of the witness before the grand jury and his signed statement as incompetent. The court ruled that whatever statement the witness made before the grand jury was not evidence before the jury; that his statement made before the grand jury should not be considered by them;

that the jury must take his evidence from his statements
on the witness stand at that time.

A witness by the name of Clarence Ragan testified
for the State that he purchased whiskey from the appel-
lant in the fall of 1923, in Randolph County, Arkansas,
and paid him $10 for same. Several witnesses were called
for appellant, who testified to the effect that the reputa-
tion of Ragan was bad. One of these witnesses, John
Clark, after testifying that he was acquainted with the
general reputation of Ragan for truth and morality and
that such reputation was bad, was asked this question:
"Based upon what you know yourself and what all the
people say about him, would you believe him on oath?"
The State objected to the question, and the objection
was sustained. The defendant did not except to the
ruling of the court.

The appellant contends that the judgment should
be reversed (1), because the court erred in refusing to
grant his motion for a change of venue; (2), that the
court allowed incompetent and prejudicial evidence to be
forced from the prosecuting witness in the presence and
hearing of the jury; (3), that the witness John Clark
should have been permitted to answer the question asked
him.

1. One of the supporting affiants to appellant's
motion for a change of venue testified that his statement
to the effect that the minds of the inhabitants of Ran-
dolph County were so prejudiced against the appellant
that a fair and impartial trial could not be had therein
was grounded upon his belief from what he had heard
that one Perrin had said at various times on the stump
when he was canvassing the county of Randolph as a
candidate for the office of sheriff. The affiant had heard
that Perrin stated repeatedly and publicly that he "was
going to send Mr. Sisson to hell or the penitentiary one."
The affiant concluded from this that the minds of the
inhabitants of Randolph County would be prejudiced
against the appellant, and that appellant could not obtain

a fair and impartial trial in that county if Perrin summoned the jury. But it was shown that, after Perrin was elected sheriff, he was, on application of the appellant, disqualified, and did not summon the jury by which appellant was tried. The testimony of this supporting affiant was to the effect that he was not acquainted with the sentiment of the people in all parts of Randolph County, but his information was that appellant's case had been widely discussed, and that much of the discussion had been detrimental to the rights of the appellant. Witness did not mean to say that appellant could not get a fair and impartial trial in Randolph County, but he knew that the sheriff's office had a vast influence, and he would not want to be tried in the county where such statements as that had gone out from the sheriff's office. The witness didn't testify that he heard any one from any part of the county say that he had been prejudiced against the appellant by reason of what Perrin had said in his speeches while canvassing the county. The testimony of the affiant, taken as a whole, therefore, was to the effect that, in his opinion, from what he had been informed by others that Perrin had said in his campaign speeches concerning the appellant, appellant could not obtain an impartial trial in Randolph County. The testimony of the affiant does not show that he had any personal and direct knowledge of the sentiment of the people of Randolph County towards the appellant from having heard any one express a sentiment that was prejudicial or derogatory to appellant. The affiant himself did not testify that he had heard Perrin or any one else express a sentiment that was prejudicial or derogatory to the appellant. The court therefore did not abuse its discretion in overruling the motion for a change of venue.

In *Dewine* v. *State,* 120 Ark. 302-309, we said: "Upon the whole we cannot say, from a perusal of the testimony, that the court erred in finding that the supporting witnesses to the petition for a change of venue were lacking in sufficient knowledge, and rested their

conclusions upon erroneous premises to the extent that they would not be deemed credible persons within the meaning of the statute.    In passing upon a question of this kind, much is left to the fair discretion and judgment of the trial court, and each case must be determined by its own particular facts.''    See also *Spear* v. *State,* 130 Ark. 457.

2.   We have often ruled "that it is not proper to admit as substantive testimony at the trial evidence heard before the grand jury.    In other words, one cannot be convicted upon evidence heard only by the grand jury, such evidence being admissible for the purpose only of contradicting the conflicting testimony given by the witnesses at the trial."    *Minor* v. *State,* 162 Ark. 136-139, and authorities there cited.    See also *Lind* v. *State,* 137 Ark. 92-106.    But the instruction of the court to the jury in the case at bar to the effect that, whatever statement the witness made before the grand jury was not evidence before them, and could not be considered by them, was sufficient to remove any prejudice that might have otherwise been created in the minds of the jury by the statements read in their presence from the testimony of the witness taken before the grand jury.

3.   The court did not err in refusing to allow the witness Clark to testify concerning the character of the witness Ragan, based upon what Clark knew himself and upon what all the people said about him.    Such is not the proper method for impeaching the testimony of a witness.    The standard is the general reputation of the witness sought to be impeached in the community where he lives. . Section 4187, C. & M. Digest; *Dean* v. *State,* 130 Ark. 322-325; *Cole* v. *State,* 59 Ark. 50.

There is no reversible error in the record, and the judgment is therefore affirmed.

WOOD, J., (on rehearing):   We have concluded upon reconsideration of the testimony that the trial court erred in holding that the affiant, whose testimony is set

forth in the original opinion, is not a credible person. The testimony of this supporting witness showed that he based his opinion that the appellant could not obtain a fair and impartial trial in Randolph County upon the fact that he had been informed that the appellant's case —the charge of selling intoxicating liquors—had been widely discussed all over the county by one Perrin, who was then a candidate for sheriff, to the effect that he was "going to send Mr. Sisson to hell or the penitentiary one."

The testimony is undisputed that Perrin had made the above announcement generally and all over the county. Perrin was elected sheriff. The statement was certainly extremely prejudicial to the appellant, and was calculated to arouse in the minds of the inhabitants of Randolph County who heard the same a prejudice against Sisson. Even though the affiant did not himself hear Perrin make such a statement and did not hear any one else express a sentiment that was prejudicial or derogatory to the appellant, nevertheless the fact remains that such a derogatory statement to appellant's cause by one who was aspiring to the sheriff's office in the county and who was thereafter elected to that office was calculated, as we have stated, to create a prejudice in the minds of the voters against the appellant; and it furnished a foundation which fully justified the affiant in his belief that the minds of the inhabitants of the county had been prejudiced against the appellant.

The trial court erred and abused its discretion in holding that the affiant, Judge Meeks, was not a credible person in the meaning of the change of venue law. While much is left to the fair discretion and judgment of the trial court in determining the credibility of supporting witnesses to a petition for a change of venue, nevertheless the court may abuse its discretion in passing upon particular facts and we are convinced that such is the case here. See *Mills* v. *State*, 1005. The motion for rehearing is therefore granted, and the judgment,

for the error in holding that one of the affiants to the affidavit supporting the petition for a change of venue was not a credible person, is reversed, and the cause is remanded for a new trial.

McCulloch, C. J., dissents.