BELL AND SWAIN *v.* STATE.

Opinion delivered September 24, 1928.

*W. J. Lanier* and *G. B. Knott*, for appellant.

*H. W. Applegate,* Attorney General, and *Walter L. Pope,* Assistant, for appellee.

HART, C. J. Robert Bell and Grady Swain were indicted, tried before a jury, and convicted of murder in the first degree. They were sentenced to death, and have duly prosecuted an appeal to this court.

Two assignments of error are pressed upon us for a reversal of the judgment. In the first place, it is earnestly insisted that the confessions introduced in evidence were obtained by the officers who had the defendants in charge by whipping them. In the second place, it is insisted that the evidence is not legally sufficient to warrant the verdict. In making this contention, counsel for the appellants urge upon us that there is no independent evidence to show that the crime of murder as charged in the indictment was committed by any one.

The indictment charged the defendants with murder in the first degree by drowning Julius McCollum in Cut-off Bayou, in St. Francis County, Arkansas. Julius

McCollum was a white boy, past eleven years of age, weighed about seventy-five pounds, and was strong for his age. He was drowned in Cutoff Bayou, in St. Francis County, Arkansas, late in the afternoon of December 29, 1927. Some days later the body of Elbert Thomas, colored, nineteen years of age, was found in the bayou near where the body of Julius McCollum had been recovered. Thomas was a one-eyed negro, and weighed about 180 pounds, and was strong and vigorous. The place where these bodies were found was about 200 yards from the front of a country store owned and operated by the father of Julius McCollum. On the afternoon in question, Robert Bell, a negro boy of medium stature and weight, eighteen years old, and Grady Swain, a negro boy fourteen years of age, and of medium stature, were at the store in question. Julius McCollum and Elbert Thomas were also there. When Julius failed to return home that evening, a search was made for him, and his body was found in the bayou about nine o'clock that evening, by his uncle. When Julius left home that morning he had on his leather boots. After he went to his father's store he pulled off his leather boots and put on some gum boots, which he was wearing when last seen that day. When his body was recovered he had no boots or socks on. Later the gum boots which he had been wearing were found in the bayou near where his body had been found. Later a pair of socks was also found in the bayou, which the mother of Julius McCollum said looked like the socks he was wearing on the day he was drowned. The body of Elbert Thomas was found eighteen or twenty feet out in the bayou, in deeper water than that in which the body of Julius McCollum was found. The body of Julius McCollum was found seven or eight feet below a boat, back of a stump, the bank sloped gradually, and the boat was untied. The boat was at the place where it usually was, at the end of a path leading from the store to the bayou. One end of the boat was not in the water. There was a seat in the end of the boat which was in the water, and

there was a big muddy track on the seat. The boat was wet all over, and had about six inches of water in it. There were no bruises or scratches on the bodies of either of the drowned boys. There was nothing in their appearance to indicate that there had been a struggle when they were drowned.

A witness for the State testified that, about nine-thirty o'clock on the night the boys were drowned, after the body of Julius McCollum had been recovered, Robert Bell told him that he had drowned Elbert Thomas and that Grady Swain had drowned Julius McCollum. Both boys were drowned at the same time. After Grady Swain and Robert Bell had been arrested and were in the custody of the officers, a confession was obtained from each of them. Evidence was adduced by the defendants tending to show that these confessions were obtained by severely whipping them. The officers admitted whipping the defendants, but denied that they did so to obtain the confessions. They claimed that they whipped them because they were impudent to them, and said that the confessions were free and voluntary. For the reason that we have reached the conclusion that the evidence is not legally sufficient to support the verdict, it will not be necessary to decide whether or not the confessions were extorted from the defendants by whipping them. In this connection, however, we again call attention to the fact that this court is committed to the rule that confessions used in evidence against defendants must be free and voluntary, and they must not be extorted from them by whipping them or by any inquisitorial method. *Greenwood* v. *State,* 107 Ark. 568, 156 S. W. 427; and *Dewein* v. *State,* 114 Ark. 472, 170 S. W. 582.

The reason we must decide whether the evidence is legally sufficient to support the verdict is that the record shows that Robert Bell voluntarily made a confession to a witness introduced by the State on the night of the day the boys were drowned, and before the defendants had been charged with drowning the boys. The confessions to the officers, which it is claimed were extorted

from the defendants, were made afterwards. This court has held that, where a confession was once voluntarily made, the fact that appellant afterwards repeated the confession under duress does not destroy or lessen the effect of the voluntary confession. *Lind* v. *State,* 137 Ark. 92, 207 S. W. 47.

This brings us to a consideration of the question of whether the evidence was legally sufficient to warrant a verdict of guilty. Counsel for appellants rely upon the well settled rule in this State that, under § 3182 of our statutes, to warrant a conviction upon a confession not made in open court there must be independent evidence to show that the offense was actually committed by some one. This court has uniformly held that, under our statute, to warrant a conviction from an extrajudicial confession of the accused, there must be independent evidence to establish that the crime has been actually perpetrated by some one. *Melton* v. *State,* 43 Ark. 367; *Greenwood* v. *State,* 107 Ark. 568, 156 S. W. 427; *Patterson* v. *State,* 140 Ark. 236, 215 S. W. 629; and *Standridge* v. *State,* 169 Ark. 294, 275 S. W. 336.

It is earnestly insisted by counsel for appellants that, outside of the confessions of appellants, which were not made in open court, there is no evidence sufficient to show that Julius McCollum and Elbert Thomas were drowned by any one. Appellants were witnesses in their own behalf, and denied their guilt. It is the theory of their counsel that the muddy track on the end of the boat was that of Elbert Thomas, and that he slipped and fell into the water, and that Julius McCollum jumped in the water to rescue him, and that they were drowned. Whether this theory is correct or not, after a careful consideration of all the testimony in the record, viewed in the light of the surrounding circumstances, we have reached the conclusion that, outside of the confessions of appellants, there is no evidence legally sufficient to show that Julius McCollum and Elbert Thomas were drowned by any one. Counsel for the State point to the fact that the boat was wet and that there was about

six inches of water in it at the time Julius McCollum's body was found on the night of the day he was drowned. His body was found about nine o'clock that night. The boat in question was used in going to and fro across the bayou, and there was a negro schoolhouse where school was in session at the time the drowning occurred. It may have been that the water was put in the boat by these negro children returning from school, while playing in the boat as they crossed the bayou. In any event, the fact that there was water in the boat and that one end of it rested on the bank is not sufficient to show that Julius McCollum and Elbert Thomas were drowned by any one. Another circumstance relied upon by the State to show that the boys were drowned by some one is that the rubber boots of Julius McCollum had been pulled off. In the first place, it may be said that, if the boys had been drowned by the defendants, or some one else, there would seem to have been no reason for the perpetrators of the crime to have pulled off the rubber boots of Julius McCollum. It may be that the little fellow jumped into the bayou in an effort to save Elbert Thomas from drowning, and kicked off his boots as he jumped in. At any rate, these circumstances are not in themselves sufficient to show that Julius McCollum and Elbert Thomas were drowned by any one. There were no marks of violence on the bodies of either Julius McCollum or Elbert Thomas when they were recovered, and nothing from their clothes or bodily appearance indicated that they had been in a struggle before their death. Elbert Thomas was much stouter than either of the boys charged with the commission of the crime. Julius McCollum was also a strong, active young boy. It is not likely that they could have been drowned by the defendants without some kind of a struggle. A careful review of all the testimony, in the light of the attendant circumstances, impels us to reach the conclusion that there was no independent evidence that any one drowned Julius McCollum and Elbert Thomas.

Hence, under the settled law of this State, the evidence was not legally sufficient to warrant a verdict of guilty. Therefore the judgment will be reversed, and the cause remanded for a new trial.