COMER *v.* STATE.

4734                                          257 S. W. 2d 564

Opinion delivered May 11, 1953.

*J. Fred Parish,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp S. Thomas* and *James L. Sloan,* Assistant Attorneys General, for appellee.

GEORGE ROSE SMITH, J. The appellant was convicted of carnal abuse and sentenced to confinement in the penitentiary for three years. Ark. Stats., 1947, § 41-3406. This appeal puts in issue the sufficiency of the State's evidence.

The information charges that Comer had carnal knowledge of his daughter Lorine, a girl under the age of sixteen. Lorine, as a witness for the prosecution, denied having had sexual relations with her father. She admitted that she had signed a statement to the contrary during the prosecuting attorney's investigation of the

case, but she declared that her former statement was untrue. The court instructed the jury that the prior statement was admitted for impeachment only and was not to be considered as evidence of the accused's guilt. There was no other evidence that the crime had been committed; so the jury must have disregarded the court's instruction and concluded that Lorine told the truth in the first instance.

We have often held that the prior inconsistent statements of a witness are admissible for impeachment but not as substantive evidence of their truth. *Minor* v. *State,* 162 Ark. 136, 258 S. W. 121; *Sisson* v. *State,* 168 Ark. 783, 272 S. W. 674. The Attorney General concedes this to be the settled law in Arkansas, but he asks us to overrule our earlier decisions for the reason that an outstanding legal thinker, John H. Wigmore, thought the rule to be unsound. Wigmore on Evidence, § 1018. Wigmore's position was that the prior statement is objectionable as substantive evidence only because it was made out of court and in circumstances when its truth could not be tested by cross-examination. Wigmore believed that the objection lost its force when the witness took the stand and submitted himself to cross-examination. He conceded, however, that the courts have universally taken the orthodox view, which we have followed in the past.

We appreciate the abstract logic of Wigmore's argument, but there are practical objections to adopting his reasoning in its entirety. If a subsequent opportunity for cross-examination converts unsworn hearsay into competent testimony, then an entire accusation, such as a charge of rape, could be fabricated merely by first having the prosecutrix emphatically deny the truth of the charge and by then calling another witness to say that the prosecutrix had made a contrary statement on some other occasion. Again, we are not persuaded that the opportunity to cross-examine months or years later is equally as valuable or equally as effective as the exercise of that privilege when the facts are much fresher in the memory of the witness. Perhaps nice distinctions could be worked out to meet these objections to Wigmore's

theory, but we suspect that the ultimate result would be not so much a rejection of the orthodox view as the recognition of minor exceptions to its applicability. Certainly the question is not wholly one-sided; Wigmore, in his discussion of the problem, mentions the fact that he himself advocated the prevailing rule in the first edition of his treatise but later changed his mind. When the arguments are this closely balanced we think the advantage of certainty in the law should tip the scales in favor of the rule of *stare decisis*.

Reversed and remanded for a new trial.