CARROLL v. STATE.

Opinion delivered June 6, 1903.

1. MURDER—INDICTMENT.—An indictment for murder which alleges that defendant "did feloniously and with malice aforethought kill and murder," etc., is not defective for failing to allege that the killing was either unlawfully or wilfully done.   (Page 404.)

2. CONTINUANCE—ABSENT WITNESS.—There was no abuse of discretion in refusing to grant defendant a continuance for the absence of a material witness, whose testimony would have been largely cumulative, where one continuance had already been granted on account of the absence of such witness, and where defendant had not used proper efforts to enable the sheriff to discover and subpœna such witness. · (Page 404.)

3. TRIAL—IMPROPER REMARKS OF COUNSEL.—A verdict of guilty of manslaughter upon a charge of murder will not be set aside because counsel for the state characterized the crime of defendant as "the most tragic crime ever perpetrated in the county," and said of defendant, "he is a murderer," if it is apparent that the jury were not improperly influenced by such remarks.   (Page 406.)

Appeal from Pike Circuit Court.

WILL P. FEAZEL, Judge.

Affirmed.

*Kirby & Carter,* for appellant.

It was error to deny the motion for continuance. Sand. & H. Dig. § 2157; 60 Ark. 564; 62 Ark. 286; 62 Ark. 543; 67 Ark. 290. The indictment was insufficient. 26 Ark. 324. It was error to

exclude the testimony with reference to statements of the deceased before the killing. Sand. & H. Dig. §§2113, 2958; 42 Ark. 542. The remarks of counsel were improper. 62 Ark. 516.

*George W. Murphy, Attorney General,* for appellee.

The indictment was sufficient. 1 McClain, Cr. L. § 382; 60 Ark. 564; 29 Ark. 225.

BUNN, C. J. This is an indictment in the Pike circuit court for murder in the second degree against Lee Carroll, the appellant. The indictment, omitting mere formal parts, reads as follows, to-wit:

"The said Lee Carroll, in the county and state aforesaid, on the 2d day of November, A. D., 1901, did feloniously and with malice aforethought kill and murder W. B. Porterfield by shooting him on the head and body of him, the said W. B. Porterfield, with a pistol loaded with gunpowder and leaden bullets, from the effect of which wounds he died on the 2d day of November, 1901, against the peace and dignity of the state of Arkansas."

To this indictment defendant interposed a demurrer in short upon the record, which the trial court overruled. The grounds of the demurrer are not stated therein, but in their argument and brief counsel for defendant say that the grounds were that it is not stated in the indictment that the killing was either unlawfully or wilfully done. It is sufficient to say that the word "feloniously" includes *unlawfully* in its meaning, for we can not say that an act feloniously done is not also unlawfully done. When an act is charged to have been done with malice aforethought, it certainly follows that it was wilfully done, for there can be no malice without an exercise of the will, in the perpetration of the deed through malice.

On the call of the case for trial, the defendant "announced not ready on account of the absence of a witness, Velpole Loshly, and filed his motion for a continuance on account of the absence of said witness. The motion sets up that "the witness was then at Whittington, Garland county, Arkansas, where he had been residing for six months past, although he resided at Nathan, in Pike county, at the time of the killing, and was present, and saw it; and that if he were present at the trial, he would testify that he saw the difficulty between defendant and the deceased, Porterfield, in which the latter was killed; that deceased raised the row with defendant; that

deceased told defendant that he *did say that he intended to cut his liver out, and that he would do it if he could,* and made for the defendant, shaking his fist in his face, and that when he got in reach he struck the defendant in the face with his right fist with all the power he had, and then caught him around the neck with (his) right hand and arm, and jerked him off the gallery; and at that time Pierce Porterfield, son of the deceased, jumped off the gallery onto defendant's back; caught defendant by the back of the neck, and hit him in the back, at which time deceased was holding defendant with his right hand, and trying to get his left hand in his left pocket; and immediately after he saw deceased trying to get his hand in his pocket, he saw the defendant draw his pistol and commence shooting," etc. In most respects this was merely cumulative of what was in evidence on the trial.

This indictment was found February 19, 1902, and the matter was postponed until the next term of court, at the instance and on the motion of the defendant, and set for trial on the 20th of August, 1902, and defendant was permitted to stand on his present bond for his appearance. On the 19th of July, 1902, at the instance of defendant, the clerk issued a subpoena for the said absent witness, directed to the sheriff of Garland county, and the same was returned in due time by the sheriff, without indorsement, and at once, at the instance of defendant an *alias* subpoena was issued by the clerk, directed to the sheriff of Garland county as before, and this writ was returned by the sheriff in due time, indorsed to the effect that the witness could not be found in his county.

There does not appear to have been the exercise of proper diligence on the part of the defendant to procure the attendance of this witness. The case had been continued at his request, and he was free to act, having been permitted to go at large on his existing bond. In his application for continuance he stated that the absent witness lived at Whittington, Garland county, Arkansas, which is ten or twelve miles from Hot Springs, the county seat, where he had resided for six months previously. It would seem that some direction or information to the sheriff as to the particular locality of the witness in his county might reasonably have been expected of the defendant, but, if such information was furnished to the sheriff, the court does not seem to have been apprised of it. It could hardly be expected of the sheriff to know the particular whereabouts of a witness so remote from the county seat, and who had taken up his

residence there so recently. Besides, no showing is made that the defendant could not have had the subpoena issued earlier, so as to have ample time to seek for the true locality of the witness, in case he could not be found at Whittington. Courts can not be expected to grant continuances on the mere statement of defendants as to locality of absent witnesses, unless other efforts are made to discover and subpoena such witness. Continuances are largely in the discretion of the trial courts, and the exercise of their discretion will not be controlled by this court, unless abused. There was, therefore, no error in refusing the continuance.

In the progress of the trial, while addressing the jury, the Hon. J. C. Pinnix, counsel for the state, said: "On the morning of the 2d day of November, 1901, there was heralded to the world the news of the most tragic crime ever perpetrated in this county," and the defendant objected to this language, and asked the court to withdraw it from the jury, which the court refused to do. And also, in his argument to the jury, Hon. H. L. Norwood, of counsel for the state, used this language, pointing to the deefndant: "He is a murderer." This was objected to by the defendant, who asked the court to exclude it from the jury, which the court refused to do.

It is difficult to determine how far an attorney may go in expressing his opinion and conclusions on the facts as was the case in both these instances. The best the courts can do is to rule on questions of the kind very much as the circumstances of each case may determine. The jury in this case does not appear to have been improperly influenced by these questionable remarks, for, instead of finding the defendant guilty of the most tragic crime ever perpetrated in this county, and, instead of finding the defendant to be a murderer, it found him guilty of the crime of manslaughter only. We can not think, therefore, there was any reversible error in the action of the court in this matter.

The evidence in the case was not the strongest for conviction for the crime of which he was convicted, as appears from the written record, but it was ample to sustain the jury in its verdict, when we take into consideration that the actual surroundings at the trial may have been quite different from any written or record showing. At all events, the evidence was fairly put to the jury, there being no reversible error in the instructions, and they were the sole judges of its weight, and the credibility of witnesses. In such case we are not at liberty to disturb their verdict.

Affirmed.