DORAN v. STATE.

Opinion delivered January 12, 1920.

1. WITNESSES — IMPEACHMENT OF OWN WITNESS BY INCONSISTENT STATEMENTS.—Where a witness for the State did not testify to any fact prejudicial to the State nor surprise the State by his testimony, but merely denied that a fact existed which the State undertook to prove by him, the State had no right, under Kirby's Digest, section 3137, to introduce other witnesses to testify to statements by the witness inconsistent with his testimony.

2.  CRIMINAL LAW—ARGUMENT OF PROSECUTING ATTORNEY.—In a prose-
    cution for seduction, statements of the prosecuting attorney in
    argument that the law in Mississippi permitted relatives of a
    seduced woman to kill the seducer, that such law is good law,
    and that "if you do not enforce the statutes and convict the men
    charged with seduction, the time will come here in Arkansas
    when the men will take the law in their own hands and go out
    and kill the seducers," etc., constituted prejudicial error.

Appeal from Logan Circuit Court, Southern District; *James Cochran,* Judge; reversed.

*Evans & Evans,* for appellant; *John P. Roberts* and *W. A. Ratteree,* of counsel.

1.    There was no corroboration of the female witness.   Kirby's Digest, § 2043; 40 Ark. 482; 77 *Id.* 16, 468; 73 *Id.* 265; 86 *Id.* 30; 92 *Id.* 421; 84 *Id.* 67; 102 *Id.* 263; 77 *Id.* 23; 135 *Id.* 173.

2.    A verdict of not guilty should have been instructed, as there was no legal corroboration of the prosecutrix's testimony.

3.    The court erred in permitting the State to contradict Dr. Armstrong.   101 Ark. 45; 112 *Id.* 481.

4.    The verdict was the result of passion and prejudice, and the impassioned remarks of the State's attorney were highly prejudicial.   58 Ark. 368; 48 *Id.* 106; 212 S. W. 319.

*John D. Arbuckle,* Attorney General, and *Robert C. Knox,* Assistant, for appellee.

1.    There was sufficient corroboration of the female's testimony.   40 Ark. 482; 77 *Id.* 468; 92 *Id.* 421; 86 *Id.* 30; 67 *Id.* 416; 73 *Id.* 291.

2.    The intercourse was established by both corroborating testimony and the circumstances, and the promise of marriage was sufficiently corroborated.

3.    There was no reversible error in reading to the jury a part of a Supreme Court decision and no error in refusing to give instruction No. 11 for appellant.

4.    No error in permitting the State to contradict its own witness, Dr. Armstrong.   Wigmore on Ev., 896, 904; Greenleaf on Ev. (2 Ed.), 444; 114 Ark. 398.

5. There was no prejudicial error in the argument of the prosecuting attorney. 23 Ark. 32; 193 S. W. 89. They were mere expressions of opinion. 112 *Id.* 452; 115 *Id.* 101.

WOOD, J. The appellant was convicted of the crime of seduction and duly prosecutes this appeal.

*First.* The State called a witness, Dr. Armstrong, and asked him if the defendant had not come to him and asked him for medicine to make a woman come around. This the doctor denied, and he was then asked if he had not told the father of the prosecuting witness, and also a Mr. Westmoreland, that the defendant had made such a request. This the doctor denied also. The father of the prosecuting witness and Mr. Westmoreland were called, and testified over the objection of the defendant that the doctor had made these statements. Appellant urges that this was reversible error.

The State was apprised before calling Dr. Armstrong that he would not testify that "defendant had come to him and asked him for medicine to make a woman come around."

Dr. Armstrong testified that he had told the deputy prosecuting attorney and also the prosecuting attorney that he would not so testify. Therefore, it affirmatively appears that the State was not surprised by his testimony.

In *Jonesboro, L. C. & E. Rd. Co.* v. *Gainer,* 112 Ark. 477-81, we said: "Where a party is taken by surprise at the testimony of his own witness, such testimony being entirely different from what the witness had given the party calling him to understand that his testimony would be, the party taken by surprise, and who is prejudiced by the testimony of his own witness, may contradict him with other evidence, and by showing that he had made statements different from his present testimony, provided the proper foundation is laid for contradiction of the witness by calling his attention to the circumstances of the time and place." See also *Derrick* v.

*State,* 92 Ark. 237; *Roy* v. *State,* 102 Ark. 588; *Carlton* v. *State,* 109 Ark. 516; *Williams* v. *Cantwell,* 114 Ark. 542; *Shands* v. *State,* 118 Ark. 460.

Section 3137 of Kirby's Digest provides that the party producing a witness is not allowed to impeach his credit by evidence of bad character unless it is in a case in which it was indispensable that the party should produce him, but he may contradict him with other evidence, and by showing that he made statements different from his present testimony.

The above is one of the provisions of our civil code taken verbatim from the civil code of practice of Kentucky. In *Champ* v. *Commonwealth,* 2 Metc. (Ky.), 17-24, the Court of Appeals of Kentucky construing this provision said: "The obvious meaning of the rule is, that where a witness states a fact prejudicial to the party calling him, the latter may be allowed to show that such fact does not exist, by proving that the witness had made statements to others inconsistent with his present testimony. But a case like the present, where the witness does not state any fact prejudicial to the party calling him, but only fails to prove facts supposed to be beneficial to the party, is·not within the reason or policy of the rule, and the witness cannot be contradicted in such case by evidence that he had previously stated the same facts to others. Such a practice would be a perversion and abuse of a rule which was intended to protect a litigant against the fraud or treachery of a witness whom he may have been induced to confide in, and would lead to consequences more injurious than the evils the rule was intended to remedy."

In *Hull* v. *State ex rel. Dickey,* 93 Ind. 128-134, the Supreme Court of Indiana after quoting the above, among other things, adds, "Surely it was not intended that a party may impeach his own witnesses, where they testify favorably or fail to thus testify. This would, indeed, be an idle and useless ceremony. It could accomplish no good, and might work great harm. No fact having been stated, none could be disproved, and, as the

jury might regard these statements as substantial proof of the fact sought to be established, great harm might result, as they are clearly inadmissible for any such purpose.'' See also *Conway* v. *State,* 118 Ind. 482; *Miller* v. *Cook,* 124 Ind. 102-4; 1 Greenleaf on Ev., p. 589, section 444.

In the instant case the witness Dr. Armstrong did not testify to any fact prejudicial to the State nor did he surprise the State by his testimony. Indeed, he did not testify as to any substantial affirmative fact. His testimony was simply a denial that the fact existed which the State undertook to prove by him, towit: that the appellant had asked witness for a medicine to cause a woman to come around or to procure an abortion. The rule was not intended to allow a party who produced a witness to enter upon the collateral issue of impeaching his own witness merely for the purpose of showing that such witness was unworthy of belief.

The time necessary for the trial of causes in the administration of justice is too precious to be frittered away with such useless procedure. Such indirect methods for establishing substantive facts were not contemplated by the above provision of our Code and are contrary to all rules for the production of evidence. See also *Thomas* v. *State,* 72 Ark. 582-84.

*Second.* In the concluding portion of his closing address to the jury in this case, Honorable C. M. Wofford, the prosecuting attorney of the district, said: ''The law in Mississippi on this subject is that the relatives of the young woman who is seduced take shotguns and go out and kill the seducer. Personally, I think that is a good law. I would not blame the young men in this country when their sisters are seduced if they were to take pistols and go out and kill the seducer. If you do not enforce the statutes and convict the men charged with seduction the time will come here in Arkansas when the men will take the law in their own hands and go out and kill the seducers of their mothers, their sisters, their wives and their daughters.''

The defendant, while the prosecuting attorney was making this statement, objected to the same and asked the court to exclude it from the consideration of the jury. The court overruled the objection of the defendant and permitted the prosecuting attorney to conclude the statement and declined to exclude the same from the consideration of the jury. The defendant duly saved his exceptions.

The above is a copy of the statement contained in the bill of exceptions. The appellant urges that the above remarks of the prosecuting attorney constitute error for which the judgment should be reversed. The appellant is correct in his contention. These remarks are characterized in the bill of exceptions as "impassioned." They are all this, and more; they were inflammatory. They purported to state as a fact that the law in Mississippi permitted relatives of young women who had been seduced to take shot guns and go out and kill the seducer. Such is not the law in Mississippi nor in any other State of the Union, nor in any civilized country. It will be observed that the prosecuting attorney not only made an incorrect statement as to the facts but, after improperly assuming that the law of Mississippi was as stated by him, went further and added his personal commendation of such a law.

The remarks of the prosecuting attorney as a whole must be construed as an appeal to the passions and prejudices of the jury. It was an endeavor to inflame their minds against the crime of seduction in general to such an extent as to persuade them to convict the accused simply because he stood "charged with that crime." For he said, "If you do not enforce the statute and convict the men charged with seduction," etc. He did not even qualify his language by saying that "men charged and proved to be guilty should be convicted," but he called upon them to enforce the statute against men who "were charged with seduction."

This court speaking through the late Mr. Justice BATTLE in *Holder* v. *State*, 58 Ark. 481, aptly character-

ized the functions of a prosecuting attorney as follows: "A prosecuting attorney is a public officer 'acting in a quasi-judicial capacity.' It is his duty to use all fair, honorable, reasonable and lawful means to secure the conviction of the guilty who are or may be indicted in the courts of his judicial circuit. He should see that they have a fair and impartial trial, and avoid convictions contrary to law. Nothing should tempt him to appeal to prejudices, to pervert the testimony, or make statements to the jury which, whether true or not, have not been proved. The desire for success should never induce him to endeavor to obtain a verdict by arguments based on anything except the evidence in the case and the conclusions legitimately deducible from the law applicable to the same. To convict and punish a person through the influence of prejudice and caprice is as pernicious in its consequences as the escape of a guilty man. The forms of law should never be prostituted for such a purpose." See also *Vaughan* v. *State,* 58 Ark. 368; *Walker* v. *State,* 138 Ark. 517.

Under our Constitution and laws every person accused of crime is guaranteed an impartial trial. Article 2, section 10, Constitution 1874; *Polk* v. *State,* 45 Ark. 165-69. This is one of the purposes for which courts are created. To this end all their functionaries are pledged by solemn oath. A fair trial cannot be had where the prosecuting attorney, one of the chief ministers of justice, is permitted to profane the very altar, where, as an official, he is expected to worship, by invoking a spirit of lawlessness to preside over the deliberations of the jury. Such was the effect of the remarks above quoted. The court, although requested so to do, "declined to exclude the same from the consideration of the jury." Thus the jury were given to understand by the judge himself, the ruling genius at the trial, that the argument was not improper. It would be a mockery of justice and a travesty upon legal and orderly procedure to hold that a prisoner under such circumstances was accorded fair treatment by those alone to whom is com-

mitted the duty of seeing that his legal rights are protected. The court erred in permitting the remarks of the prosecuting attorney over the objection of the appellant, and in not excluding at his request such remarks from the jury.

Inasmuch as the cause must be remanded for a new trial, we refrain from commenting upon the sufficiency of the evidence on the questions of the corroboration of the prosecutrix as to the promise of marriage and the act of sexual intercourse.

For the errors indicated, the judgment is reversed and the cause remanded for new trial.

McCulloch, C. C., (concurring). I concur in the judgment of reversal on the ground that the testimony of witness Westmoreland was incompetent, and that the court erred in admitting it over appellant's objection, but I can not agree with the other judges in the conclusion that the remarks of the prosecuting attorney constituted prejudicial error which also calls for a reversal.

The very intemperate remarks of the prosecuting attorney were, of course, highly improper and can not be accounted for on any ground other than the excitement of the occasion, but they constituted, after all a mere expression of the opinion of that officer, and I can not conceive of any impression being made on the minds of an intelligent jury calculated to result in prejudice to the rights of appellant. We should not reverse judgments for mere irregularities in the proceedings, nor even for errors, however gross, unless it is probable that some prejudicial effect resulted.

I think the court is now taking a backward step in the trend of its decisions in declaring that the remark of the prosecuting attorney, which merely expressed his opinion as to the duty of the jurors in this class of cases, calls for a reversal of the judgment.

I concur, as before stated, in the judgment of reversal, but wish to express my disapproval of the ruling of the court in declaring the argument of counsel to be a reversible error.