WILLIAMS *v.* STATE.

Opinion delivered November 9, 1931.

*Geo. Ellis* and *Isgrig & Morrow,* for appellant.

*Hal L. Norwood,* Attorney General, and *Pal Mehaffy,* Assistant, for appellee.

KIRBY, J. This appeal is from a judgment of conviction of murder in the second degree against appellant for the killing of one Pinkey Lee with a sentence of five years' imprisonment.

It appears from the testimony that appellant, with his wife and a girl visiting them, went on the evening of the killing to the house of Sam Tappin, where they were having music, dancing and refreshments. They had first gone to Caldwell's house, but could not get anything to drink there.

The testimony on the part of the State tends to show that appellant walked into the room, which was crowded, and, observing Pinkey Lee sitting on a divanette with two or three others, walked over in front of him, caught him by the hand or shoulder and shot him to death.

According to the proof adduced for the defense, he walked into the room after having been told on the porch that Pinkey Lee had been making threats against him. Observing Lee getting up and attempting to draw a knife, appellant said: "Drop that knife," and began shooting. Appellant stated he picked up the knife after he shot Lee and carried it away with him, and that the knife produced at the trial was the one deceased drew on him.

Other witnesses, the ones sitting on the divanette with Lee at the time, stated that they did not see him draw any knife or attempt to do so, that they saw no knife at all, but would have seen it, had Lee have drawn a knife.

The evidence also tended to show that Lee was shot while attempting to get up.

It is claimed that the court erred in refusing to allow the impeachment of witness, Mary Lee Owens, by showing a contradictory statement made by her relative to the description of the knife said to have been drawn by Pinkey Lee; and also by the refusal to give instructions requested by appellant.

The witness, Mary Lee Owens, was called for the defendant, and testified that the deceased had a green handle knife on the night of the killing, and that the knife had a "forkedy end." Defendant's attorney claimed that he was surprised at the testimony of this witness describing the knife, and that she had made previous statements leading him to believe that the knife she saw in the possession of the deceased was the same as that introduced in evidence at the trial. The court refused to permit him to impeach his own witness, and there was no error in the ruling.

Appellant's attorney stated for the record that he had talked with this witness before the trial when she described the knife, which he identified from the description as the one produced at the trial. The witness stated to him, however, before she was called to the stand that she was not going to testify that she saw any knife at all, but that she had told him what kind of knife it was when he saw her at her home. The attorney could not well have been surprised, as the witness told him before she was called to the stand that she was not going to swear that she saw a knife at all on that night; much less that the knife that the deceased had on the night of the killing fitted the description of the knife produced at the trial. He could not, of course, be allowed to call a witness in order to obtain testimony for which he might be impeached. "It is not in every case that one's own witnesses may be contradicted by proof of his prior statements. * * * And it is not enough that he disappoints the expectations of such party by failure to give beneficial testimony. * * * In order to bring himself within the exception to the

general rule against the impeachment of one's own witness, it must appear that the party calling the witness was entrapped by his previous statements into putting him on the stand and was surprised by his testimony." 28 R. C. L., p. 645. The witness testified to no fact prejudicial to the defendant, but only failed to testify that the knife that the deceased had in his possession on the night of the killing fitted the description of the one produced at the trial. *Doran* v. *State,* 141 Ark. 442, 217 S. W. 485.

No error was committed in the refusal to give instruction No. 1A. to the effect that· the indictment was not evidence of defendant's guilt, the court having fully charged on the subject of presumption of innocence of the defendant. *Deshazo* v. *State,* 120 Ark. 494, 179 S. W. 1012.

It is sufficient answer to the contention in the other assignments that the court erred in its refusal to give certain instructions requested by appellant to say that the law was fully and correctly declared by the court upon all points complained about, and that no error was committed in the refusal to give his correct instructions requested, since they were already fully covered by the court's charge, and certainly none in its refusal to give others not correct declarations of the law.

The testimony is amply sufficient to support the verdict, and would have warranted the jury in finding appellant guilty of a higher degree of offense.

We find no prejudicial error in the record, and the judgment is affirmed.