SMITH *v.* THOMASON.

5-1707                                    318 S. W. 2d 814

Opinion delivered December 22, 1958.

*Garvin Fitton* and *Arnold Adams,* for appellant.

*Virgil D. Willis* and *Eugene W. Moore,* for appellee.

WILLIAM J. SMITH, Associate Justice. This case grew out of an automobile accident that occurred on U. S. Highway 62 in Carroll County at a place known as Mockingbird Hill on March 23, 1956 at approximately 10:30 o'clock in the evening.

All of the appellees, E. O. Thomason, his wife, Imogene Thomason, his son, David Thomason, Pearl Boren and Freda Boren, were riding in an automobile traveling to the east and being operated by E. O. Thomason, when at the crest of Mockingbird Hill it collided with an automobile traveling to the west on the south side of the highway being operated by appellant Joe R. Hosley, and also occupied by Roy Larimer. The Hosley automobile had come up the hill almost abreast of an automobile being operated by appellant Jerral Smith, and also occupied by David Gooley, Leon Hudson, Raymond Bunch and John D. Lively. The Smith automobile remained on the north side of the highway and did not collide with either of the other two automobiles. Appellant Arthur C. Berry had signed for a driver's license for his stepson, Joe R. Hosley, who was 16 years of age, and appellant Joseph H. Smith had signed for a driver's license for his son, Jerral Smith, who was 17 years of age. Sec. 75-315, Ark. Stats. 1947.

Appellees filed a complaint against appellants in which they alleged that Hosley and Jerral Smith were negligent in speeding and racing; that Hosley was negligent in attempting to pass the Smith automobile; that Jerral Smith was negligent in speeding up to prevent Hosley's passing; that Jerral Smith was negligent in crowding Hosley's automobile; and, that Hosley was negligent in operating his automobile on the left-hand side of the highway. Appellees prayed a judgment against appellants for damages to compensate for personal injuries and property damage. The cause was tried to a jury and was submitted on interrogatories. Pursuant to the jury's answers to the interrogatories the court entered a judgment for appellees for a total of $21,500, together with costs.

Appellants rely upon ten points for reversal of the trial court's judgment and we have determined that at least one of these points requires that the cause be remanded for a new trial. We agree with appellants' contention that it was prejudicial error to permit appellees to impeach their own witness, Roy Larimer, by in-

troducing a statement previously signed by him. This witness was called by appellees and on direct examination testified in part as follows: "Q. Did Jerral Smith speed his car up? A. I can't say. Q. Did you succeed in passing the Jerral Smith car? A. No, sir. Q. What prevented it? A. Either our car lost speed or he speeded up. * * * Q. Do you know why you didn't get ahead of him? A. No, sir. * * * Q. It just happened instantly? A. It happened pretty fast. Q. Roy, to refresh your memory I want to ask you if you signed this statement? Mr. Adams: We object to the impeachment of the witness. Mr. Willis: I am not impeaching him. The Court: Is it contradictory to what he has testified? Mr. Willis: No, because he says he doesn't know whether his car slowed or whether Jerral Smith speeded up." Thereafter the court permitted appellees to show this witness his previous statement and then ask if it refreshed his memory. When the witness answered "not too much", appellees announced to the court that they were taken by surprise and the court ordered the matter argued out of the presence of the jury. After the jury retired testimony and argument were heard by the court relative to Larimer's statement and the circumstances under which it was signed. The jury was recalled and over the continuing objection of appellants this procedure was followed: "Further examination by Mr. Willis: Q. Roy, did you sign a written statement presented to you by the Deputy Sheriff of Carroll County in regard to this accident here about 3 months ago? A. Yes, sir. Q. Is this the statement which you signed? A. Yes, sir. Mr. Willis: May I read it to the jury? The Court: Very well (reading from the written statement) 'I was a passenger in an automobile driven by Joel Hosley; that about half way between Alpena and Green Forest the Hosley car overtook a car driven by Jerral Smith. Hosley attempted to pass the Smith car on the west slope of the hill. Smith speeded up to prevent Hosley from passing and there was a race through the hollow and on up the Mockingbird Hill. We were traveling side by side when we reached the top of the hill. The Hos-

ley car struck a car at the top of the Hill.' Signed Roy Larimer. The Court: Mr. Willis, I think the court should mention to the jury at this point the statement that you have read, which the witness has stated he signed previously, if you find that it contradicts the testimony that he is giving now, or has given, you will consider it solely and only for the purpose of going to the credibility of this witness, and in determining how much credit should be given to his testimony, not to prove any facts in issue."

Prior to the introduction of this statement, Larimer had given no positive testimony relative to the allegations that the boys were speeding and that Smith had speeded up to prevent Hosley from passing. These questions were vital and all important and had a direct bearing upon the liability, if any, of appellants. The use of Larimer's statement served to supply a deficiency at that point in the trial in appellees' evidence. Under these circumstances appellees were permitted to introduce a statement containing substantive evidence not otherwise admissible by contending it was for impeachment purposes, Sec. 28-706, Ark. Stats. 1947, at a time when there was nothing to impeach and nothing to contradict. We hold that this was prejudicial and was error, even though the court instructed the jury that the statement was to be considered as only going to the credibility of the witness. It is significant that appellees admitted (see counsel's statement above) that Larimer had not testified to the contrary and it is to be noted that he had not testified to anything prejudicial to appellees. The mere fact that he did not give the positive testimony anticipated by appellees did not render his previous statement admissible, and enable them to use his statement to supply evidence they had failed to elicit from him.

In the recent case of *Milum* v. *Clark*, 225 Ark. 1040, 287 S. W. 2d 460, this court stated: "For such evidence to be admissible, however, the witness to be impeached must have given substantive testimony damaging to the

party who seeks to attack his credibility. It is settled that inconsistent prior statements cannot be used to impeace a witness who merely fails to give the positive testimony that the party expected from him. *Doran* v. *State,* 141 Ark. 442, 217 S. W. 485; *Murray* v. *State,* 151 Ark. 331, 236 S. W. 617; *Williams* v. *State,* 184 Ark. 622, 43 S. W. 2d 731. The reason is that the prior statements are not competent evidence of the basic fact, being hearsay, and are admissible only as bearing on the issue of credibility. *Comer* v. *State,* 222 Ark. 156, 257 S. W. 2d 564. But if the witness has testified to nothing his credibility is immaterial.''

The test for determining when a party may impeach his own witness by the use of contradictory statements requires two conditions: First, the witness must give testimony at variance with that anticipated by the party calling him; and, second, such testimony must be prejudicial or detrimental to the case of the party calling him. Here the witness testified to nothing in favor of or against the party calling him. 58 Am. Jur., ''Witnesses'', Secs. 799 and 800.

Ordinarily we would not refer to the other points argued in the briefs, but since this case is being remanded for a new trial, we think it proper for us to discuss certain of the points raised.

The first four points argued by appellants pertain to the *voir dire* examination of the veniremen on the subject of insurance. The rules governing *voir dire* inquiry into this subject were set forth in the case of *DeLong* v. *Green,* 229 Ark. 100, 313 S. W. 2d 370, and we do not consider it necessary for us to further elaborate on the rules laid down in that case.

During the trial of this cause the appellants who are minors moved for a directed verdict because a guardian had not been appointed to defend them, as required by Sec. 27-825, Ark. Stats. 1947. We do not think they were entitled to a directed verdict, but a mistrial, as to these minors, should have been ordered. This would

have halted the proceedings against these minors until there was a compliance with the statute.

The only other point we deem it necessary to mention is appellees' closing argument in which counsel stated: "* * * Mr. Adams didn't call them — he asked why we didn't call them, because gentlemen of the jury we have got their statements in the file and their statements are they were racing and that car increased his speed." Appellants objected and requested the court to admonish the jury not to consider the statement, and this was done. We are constrained to say that in our opinion this statement was highly improper and grossly prejudicial and would have called for a mistrial upon proper motion by appellants. *Gregory* v. *Rees Plumbing Co., Inc.,* 222 Ark. 908, 263 S. W. 2d 697.

The judgment is reversed, and the cause is remanded.