GRAY *v.* STATE.

5110                                                           379 S. W. 2d 22

Opinion delivered May 25, 1964.

*Little & Enfield,* for appellant.

*Bruce Bennett,* Attorney General, by *Russell J. Wools,* Asst. Atty. General, for appellee.

ED. F. McFADDIN, Associate Justice. Appellant Cecil Gray was charged, tried, and convicted of stealing twelve head of cattle of the value of $1,000.00 (Ark. Stat. Ann. § 41-3917 [1947]), and he brings this appeal. His motion for new trial contains six assignments; but we find no merit in any of them except those relating to the improper argument of the Prosecuting Attorney.

The defendant, Mr. Gray, testified that he moved from Texas to Arkansas in 1963 and purchased a farm of 200 acres near Huntsville in Madison County; that later he purchased a farm of 600 acres near Gatesway in Benton County and moved to that location in Benton County; that he did not buy any cattle, but raised hogs and goats; that he noticed stray cattle running on his Gatesway farm; that these cattle drank so much water from his troughs that it created a water shortage, so he drove the stray cattle into his corral; that on Sunday morning, June 23, 1963, he borrowed a truck from a neighbor and took the twelve head of stray cattle to his other farm in Madison County several miles away; and that he made two trips to takes the stray cattle from his farm in Benton County to his farm in Madison County. Mr. Gray claimed that he had no intention of stealing the stray cattle but was only removing them to get them away from his limited supply of water.

The State had shown that when Mr. Gray moved the cattle he had told several people he had bought them; that when he had first been asked on June 24th about moving the cattle he had denied ever having seen any cattle; that later, on June 26th, he had likewise denied to the Sheriff any knowledge of the cattle; but later he had admitted moving the cattle to Madison County, and that eventually he had gone with the Sheriff and Mr. Legg, the owner of the cattle, to Madison County, where Mr. Legg's cattle were located on Mr. Gray's place. In the face of all this testimony Mr. Gray insisted that he had no intention of stealing the cattle. He took the witness stand in his own defense, and on cross examination the following occurred:

"Q. Have you ever been convicted of anything?

"A. Never have been convicted in my life.

"Q. You haven't, now, down in — where did you come from?

"A. Texas.

"Q. Where in Texas?

"A. Angleton, Texas.

"Q. Do you know the sheriff down there?

"A. Jack Marshall.

"Q. Do you tell the jury you've never been convicted of anything or plead guilty to anything, under your oath? . . . Well, you know. Have you, or not?

"A. Now, I don't understand what you're talking about now.

"Q. Have you ever been convicted or pleaded guilty to any criminal offense at all?

"A. No, sir.

"Q. You understand what criminal offenses are? You are saying.that, under your oath? We don't misunderstand each other?

"A. Not that I know of, I've never been convicted or plead guilty, or anything."

The excerpt, as above copied, seems to be all there is in the record concerning any testimony or evidence or question about previous conviction. With this as the background we come to the statements made by the Prosecuting Attorney in his closing argument. The entire closing argument of the Prosecuting Attorney was transcribed and is before us, and we copy the pertinent excerpt:

"MR. COXSEY: When the witness takes that stand and you ask him if he's been convicted of a crime—now follow me—and he says, no, we can't dispute it under the law. It's a collateral issue. You can't dispute it. Some of you may wonder if he is guilty, why we can't show it. We can't under the law. That's something between him and his own conscience and his own God and you tell me that he didn't perjure himself before the Almighty God and before man here? Not only is he guilty of taking cattle that don't belong to him and falsi-

fying to his fellow man, but he is guilty of perjuring his soul right here, and you know it, and he knows it.

"MR. LITTLE: Object and ask it be stricken.

"THE COURT: If you are going to object, I want to hear it.

"MR. COXSEY: He's going to object to everything I'm going to say.

"THE COURT: Overruled.

"MR. LITTLE: Save our exceptions."

We admire and commend a vigorous prosecuting attorney, as is the one in this case; yet there are certain limitations prescribed by our decisions as to the extent to which a prosecuting attorney—the representative of the State—may go in arguing the case to the jury. Here, we have a defendant on the witness stand who is asked and interrogated as to previous convictions. The State did not offer any previous conviction record, if there was such. Yet in the closing argument the Prosecuting Attorney said that even though the State could not impeach the testimony of the defendant as to previous convictions, still the Prosecuting Attorney knew that the witness had perjured himself on that point. This goes beyond the permitted line of argument.

We have a great number of cases on this matter of the extent to which a prosecuting attorney may go in his argument, and our Court has been more liberal in allowing arguments than have many other courts.[1] In *Carroll v. State,* 71 Ark. 403, 75 S. W. 471, we said:

"It is difficult to determine how far an attorney may go in expressing his opinion and conclusions on the facts as was the case in both these instances. The best the courts can do is to rule on questions of the kind very much as the circumstances of each case may determine."

---

[1] In 50 A.L.R. 2d 766 there is an exhaustive annotation entitled "Propriety and effect of prosecuting attorney's argument to jury indicating his belief or knowledge as to guilt of accused." In that annotation the holdings of the various jurisdictions are given. See also 53 Am. Jur. 392, "Trial" § 486.

In the light of our statement in *Carroll* v. *State, supra,* we reach the conclusion that the argument in the present case was improper and highly prejudicial. The State had introduced no evidence of any prior convictions of appellant Gray, and yet the Prosecuting Attorney told the jury he knew the defendant had committed perjury when he stated he had never been convicted of any offense. This was going too far. In *Hays* v. *State,* 169 Ark. 1173, 278 S.W. 15, the special prosecuting attorney in his closing argument stated facts that were not in evidence; and, in reviewing the case, because of the improper argument, we said:

"This court has been very careful to guard the rights of accused persons, and counsel for the State is never allowed to state facts which are not evidence for the purpose of securing a conviction. Counsel for the State not only stated that he believed that the defendant had carried the girl to El Paso, but that the presumption was that he had carried her there. As above stated, the court refused either to reprimand the attorney or to interfere with him in any way in making this kind of an argument. This amounted to an approval of the argument, and constitutes such prejudicial error as calls for a reversal of the judgment. *Doran* v. *State,* 141 Ark. 442; *Brown* v. *State,* 143 Ark. 523; *Crosby* v. *State,* 154 Ark. 20; and *Hughes* v. *State,* 154 Ark. 621."

The situation in the case at bar is similar to that in *Hughes* v. *State,* 154 Ark. 621, 243 S. W. 70, from which we copy:

"Lastly, appellant contends that his rights were prejudiced by the following statements of the prosecuting attorney made in closing the argument, to-wit: 'I know he is guilty, I am willing to meet my God in the next hour knowing that Hughes is guilty, because I am thoroughly convinced. I have examined the testimony and know so much about it, and know things that never get to anybody else.' When this statement was made, the counsel for appellant objected, and the court stated that the argument of the prosecuting attorney was im-

proper and the jury should not consider it. The statement was an attempt on the part of the prosecuting attorney to testify. He, in effect, said that he was in possession of facts which could not be revealed to the jury, but which riveted conviction upon appellant. Coming from a sworn official, the remark was calculated to make a deep impression upon the minds of the jurymen. It cannot, perhaps, be classed with remarks the effect of which cannot be removed even by a solemn admonition of the court, but it was certainly a flagrant violation of the right of appellant to a fair and impartial trial vouchsafed to him by the Constitution and laws of the State of Arkansas. Considering the highly prejudicial character of the remark, its effect could not be removed by a mild admonition of the court. We think the trial court, in the exercise of a sound discretion, should have challenged the statement, with such comment as the exigencies of the occasion demanded. He might have said that it was the sworn duty of the prosecuting attorney to reveal all the facts within his knowledge, and his failure to do so would have been proof conclusive that he had no such information; or he could have stopped the trial and required the attorney to establish the facts in his possession by competent testimony. Either course would have erased the ill effects of the remark from the minds of the jury, but, in the opinion of the majority, the mild admonition of the court, as indicated by the language used, did not meet the exigencies of the particular situation.''

In the case at bar the defendant Gray duly saved his exceptions, no admonition of any kind was given, no withdrawal of the remarks was made; so we have no alternative except to reverse the judgment and remand the cause for a new trial.